IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN JOHNSON d/b/a CG JOHNSON & COMPANY, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>   v.<br><br>FARMERS & MERCHANTS BANK OF LONG BEACH,<br><br>        Defendant. | Case No.  20-cv-6078<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Robin Johnson d/b/a/ CG Johnson & Company. (hereinafter "Johnson" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Farmers & Merchants Bank of Long Beach ("Farmers & Merchants" or "Defendant"), seeking compensation for its refusal to pay her and many other similarly-situated agents for the services it rendered to recipients of Small Business Administration ("SBA") loans, as required under the CARES Act.  Johnson alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief.

**NATURE OF THE ACTION**

1.      Congress passed the CARES Act on March 27, 2020 to provide economic relief to workers and small businesses suffering economic hardship due to the COVID-19 pandemic.[1]

---

[1] The spread of COVID-19 was declared a pandemic by the World Health Organization ("WHO") on March 11, 2020. On March 13, 2020, President Donald Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia." The Federal Government expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the
*Footnote continued on next page*

Part of the CARES Act, known as the Paycheck Protection Program ("PPP"), was designed to keep small businesses afloat and avoid massive layoffs by distributing sufficient funds to cover up to eight weeks of payroll and other expenses through the Small Business Administration ("SBA").  15 U.S.C. §636(a)(36).  The initial bill authorized up to $349 billion in forgivable loans, and Congress subsequently added an additional $310 billion to the program.

2.      Congress provided that PPP loans would be disbursed through SBA-approved lenders, though the loans themselves would be guaranteed by the federal government.  In exchange for their participation, lenders would receive a percentage of each loan as an origination fee.  The amount of each loan would depend on the applicant's historical payroll information, and so Congress understood that applicants would often require the help of agents, such as accountants, to prepare the loan applications.  But Congress did not want the process to be delayed by fee negotiations between lenders and agents, nor for small businesses already in economic distress to have to pay agents themselves.  Accordingly, the PPP regulations provide that lenders will pay the agents a specified percentage of their origination fee; agents may not charge applicants for this work.[2]

3.      However, now that PPP loans have been disbursed to borrowers, Defendant has refused to pay Johnson and other similarly-situated agents their statutorily mandated fees.  Accordingly, Johnson brings this class action lawsuit to recover fees for the work she and other agents performed assisting borrowers with PPP loan applications submitted to Defendant which should have been compensated for by Defendant.

---

*Footnote continued from previous page*
Federal, State and local public health measures that are being taken to minimize the public's exposure to the virus."  SBA Interim Final Rule, 85 Fed. Reg. 20811.

[2] SBA Interim Final Rule, 85 Fed. Reg. 20816 § (4)(c) (hereinafter, the "PPP regulations").

2007182.1

## PARTIES

4.      Plaintiff Robin Johnson d/b/a/ CG Johnson & Company is an accounting firm with its principal place of business located in Long Beach, California.

5.      Defendant Farmers & Merchants is a regional bank with its principal place of business located at 302 Pine Avenue, Long Beach, California 90802. Farmers & Merchants conducts substantial business throughout this District and the State of California.

6.      In this Complaint, references made to any act of Defendant shall be deemed to mean that officers, directors, agents, employees, or representatives of Defendant named in this lawsuit committed or authorized such acts, or failed and/or omitted to adequately supervise or properly control or direct its employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

7.      This  Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because, as to the proposed Class and Subclass, (a) at least one member of the proposed Class, which consists of at least 100 members, is a citizen of a different state than Defendant; (b) the claims of the proposed Class Members exceed $5,000,000 in the aggregate, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

8.      Personal jurisdiction over Defendant is proper because Defendant has its primary place of business in the District, transacts business in the State of California, and a substantial number of the events giving rise to the claims alleged herein took place in California.

2007182.1

9.      This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the PPP regulations as set forth in 85 Fed. Reg. 20816 § (4)(c).

10.      Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts or omissions giving rise to the claim occurred in this judicial District, including work performed by Plaintiff on behalf of business clients within this District.

## FACTUAL ALLEGATIONS

11.      The PPP was designed to be fast and straightforward.  Small businesses could apply as early as April 3, 2020 – just four days after the bill was passed.  Businesses would be allowed to apply through SBA-approved lenders using applications based on historical payroll information.  Lenders would not have to verify the information themselves, but instead would rely on representations and certifications from the borrowers.  All of these measures were designed to avoid delay and provide economic relief to borrowers as quickly as possible.  And the lenders themselves were incentivized to cooperate because they would receive generous origination fees paid by the federal government, which would also guarantee the loans (which were mostly forgivable anyway, as long as they were used for approved expenses such as payroll and rent).  In other words, the lenders are paid very well and assume zero risk.

12.      Because small businesses were required to make truthful and accurate applications in the limited time they were given to submit those applications, Congress recognized that they would need assistance from professional accountants, tax preparers, financial advisors, and other such agents as small businesses normally rely on.  Congress explicitly provided that the Administer of the SBA would establish a limit on the fees that agents could collect for assisting borrowers with their applications.  15 U.S.C. §636(a)(36)(P)(ii).

2007182.1

13.      Congress also provided that lenders, such as Defendant, would receive a certain percentage of the loans they originated: 5% for loans of not more than $350,000, 3% for loans of more than $350,000 and less than $2 million, and 1% for loans of at least $2 million. 15 U.S.C. §636(a)(36)(P)(i).   The SBA's PPP regulations specifically directed lenders to pay agents from these lender fees:

> *Who pays the fee to an agent who assists a borrower?*
>
> Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:
>
> i. One (1) percent for loans of not more than $350,000;
>
> ii. 0.50 percent for loans of more than $350,000 and less than $2 million; and
>
> iii. 0.25 percent for loans of at least $2 million. [3]

14.      The SBA also put out an "Information Sheet for Lenders" which states: "Agent fees will be paid out of lender fees. The lender will pay the agent. Agents may not collect any fees from the applicant." [4]   The Information Sheet defines an agent broadly as "an authorized representative and can be: an attorney, an accountant, a consultant, someone who prepares an applicant's application for financial assistance and is employed and compensation by the applicant; someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans; a loan broker; or any other individual or entity representing an applicant by conducting business with the SBA."[5]   The PPP regulations do not require any specific form or process to be

---

[3] SBA Interim Final Rule, 85 Fed. Reg. 20816 § (4)(c).
[4] U.S. Dep't of Treasury, *Paycheck Protection Program (PPP) Information Sheet Lenders,*
https://home.treasury.gov/system/files/136PPP%20%Lender%20Information%20Fact%20Sheet.pdf
[5] *Id*.

2007182.1

followed between the agent and the lender in order to qualify the agent to receive their portion of the fees.

15.     Both the agent and the lender were specifically forbidden by the PPP from charging small businesses any fees for loan origination or for assistance in preparing the loan application. Instead, the PPP provided that the lenders would be paid by the federal government, and the agents would be paid a portion of that amount by the lenders.  The SBA made its intent clear by going so far as to prescribe the specific amounts agents were to be paid by participating lenders.  By allocating fees for lenders to distribute to agents, the SBA protected small businesses, already distressed by the economic hardship due to the COVID-19 pandemic, from having to outlay money to access a PPP loan, to expedite the distribution of the loans, and to avoid negotiations between lenders and agents that would delay the loans and lead lenders to prioritize businesses that did not work with agents.

16.     Defendant has secured funding for small businesses through the PPP; however, Defendant has refused to pay the agents.  Indeed, when setting up its PPP application process, Defendant deliberately failed to allow applicants who had been assisted by an agent a means to identify the agent.  Defendant could have provided a place within the application for this purpose.  It could have directed applicants who had relied on an agent to include SBA Form 159, which the SBA provides for agent disclosure in connection with regular 7(a) loans.  But it did none of these things so that after the PPP loans had been disbursed, it could claim ignorance of the existence of the agent as an excuse not to pay the agent its share of the statutorily mandated fee.

17.     As a result of Defendant's acts and omissions, Johnson and many other similarly-situated agents were denied payment owed for work performed in enabling their clients to apply for PPP loans.  Defendant's conduct is contrary to the purpose, spirit, and letter of the PPP and SBA rules.  Johnson brings this case to recover damages for, and vindicate the rights of, herself and similarly situated agents harmed by Defendant's conduct.

2007182.1

**PLAINTIFF ROBIN JOHNSON d/b/a CG JOHNSON & COMPANY**

18.     Plaintiff Robin Johnson d/b/a/ CG Johnson & Company, is an accounting firm located in Long Beach, California.

19.     Johnson assisted several clients in securing PPP loans that were critical to their ability to survive the economic climate created by the COVID-19 pandemic.  She assisted one such client ("Client") in securing loans through Defendant.  Johnson's work for the Client included advising it on eligibility requirements for PPP loans, calculating the payroll information needed for the application, reviewing the applications before filing, and providing documentation in support of the application.  She also worked to explain to the Client how the PPP funds were to be used upon distribution so that the loans would be eligible for forgiveness and the employees of those businesses could come back to work.  She helped prepare the application so that Defendant could easily verify the necessary financial data, thereby expediting the Client's loan.

20.     The Client's loan was for approximately $63,641; therefore, Johnson understood that she would be paid approximately $636.00 in total fees from Defendant after the loans had been disbursed.  Despite the fact that Johnson's Client had received the loan, and that Johnson was eligible to have her fees paid by out of the funds allocated by the SBA to Defendant for exactly that purpose, Defendant failed to provide Johnson with her requisite fees.  Indeed, Defendant affirmed in a telephone call with Plaintiff Johnson on or around June 26, 2020, that it would not reimburse her for the work she performed on behalf of Client.

21.     To date, Johnson has not received any money for her work on the Client's PPP loan application.  That work injured Johnson to Defendant's benefit, because Defendant was able to rely on the Client's verifications (made possible by Johnson's work) to obtain approval for a loan from which Defendant received origination fees.  As a result of Defendant's unlawful and

- 7 -

unfair actions, Johnson and the Class suffered financial harm by being deprived of the statutorily

mandated compensation for their professional services assisting clients in obtaining PPP loans.

## CLASS ALLEGATIONS

22.    Plaintiff brings this class action on behalf of herself and the following Class:

> All persons and businesses in the United States who served as an
> agent in relation to, and provided assistance to a client in relation
> to, the preparation and/or submission of a client's PPP loan
> application to Farmers & Merchants Bank which resulted in a loan
> being funded under the PPP.

23.    Plaintiff further brings this action on behalf of a subclass of individuals defined as

follows:

> **California Subclass.** All persons and businesses in California who
> served as an agent in relation to, and provided assistance to a client
> in relation to, the preparation and/or submission of a client's PPP
> loan application to Farmers & Merchants Bank which resulted in a
> loan being funded under the PPP.

24.    Excluded from this Class and Subclass (hereinafter "the Class" unless otherwise

indicated) are: (1) any Judge or Magistrate presiding over this action and members of their

families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any

entity in which Defendant or its parents have a controlling interest and its current or former

employees, officers and directors; (3) persons who properly execute and file a timely request for

exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated

on the merits; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives,

successors, and assigns of any such excluded persons.

25.    Plaintiff reserves the right to expand, limit, modify, or amend this Class

definition, including the addition of one or more subclasses, in connection with Plaintiff's

motion for class certification, or any other time, based upon new facts obtained during discovery.

2007182.1

26.     Numerosity: The Class is composed of hundreds or thousands of agents ("Class Members") whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

27.     Commonality & Predominance: This case presents common questions of law and fact, the answers to which will drive the resolution of the litigation, and which are capable of classwide resolution.    These common questions of law and fact predominate over any individualized questions affecting individual Class Members, and include, but are not limited to, the following:

a.      Whether Defendant is obligated under the CARES Act and/or is implementing regulations to pay Class Members agent fees for their services assisting PPP loan applications;

b.      Whether Defendant actively concealed from Class Members and the public that it had no intention of paying Class Members their agent fees pursuant to the CARES Act and its regulations, and if so, whether it is likely to continue to do so;

c.      Whether Defendant's conduct was willful and knowing;

d.      Whether Defendant was unjustly enriched by its conduct at the expense of Class Members;

e.      Whether Defendant's conduct constitutes a violation of Cal. Bus. & Prof. Code § 17200, *et seq*.;

f.

g.      Whether Class Members are entitled to damages and/or restitution; and

h.      Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit;

28.     Superiority: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, there are practical hurdles to the ability of individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Compliant. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

29.     Typicality: Plaintiff's claims are typical of the claims of all Class Members, in that Plaintiff and Class Members sustained damages arising out of Defendant's uniform unlawful conduct.

30.     Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and her counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other Class Members; rather, Plaintiff shares the same interest as all Class Members in remedying Defendant's uniform unlawful conduct.

2007182.1

31.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT I–DECLARATORY RELIEF

32.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

33.      Plaintiff and the Class are "agents" as defined by the SBA regulations for the PPP.

34.     Plaintiff and the Class have assisted clients with the process of preparing applications, and applying for, PPP loan funds. Defendant, despite the clear command of the PPP regulations, has refused to make these payments. An actual controversy has arisen between Plaintiff and the Class, on one hand, and Defendant on the other, wherein Defendant denies by its refusal to pay that they are obligated to pay Plaintiff's and the Class's "agent" fees pursuant to PPP regulations.

35.      Plaintiff and the Class seeks a declaration, in accordance with the CARES Act and the PPP regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendant is obligated to pay agents –within the SBA-approved limits—for the work performed on behalf of a client in relation to the preparation and/or submission of a PPP loan application that resulted in a funded PPP loan.

## COUNT II–VIOLATIONS OF BUS. & PROF. CODE § 17200, *et seq.*

36.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

37.     Pursuant to Cal. Bus. & Prof. Code §17200, "any unlawful . . . business act or practice" is prohibited in the State of California. This statute creates a private right of action

2007182.1

based on any unlawful act committed in the course of business, particularly where it provides the unlawful actor with an unfair business advantage. Local, state, and/or federal law can serve as the basis for an "unlawful . . . business act or practice[.]"

38.     As alleged herein, Defendant engaged in "unfair" business practices in the form of misrepresentations on their website, that "[i]f an agent assists the borrower, the lender will compensate the agent out of the fee it receives from the SBA, at a rate of 0.25%-1% of the loan amount, depending on its size."[6] However, Defendant has expressed its refusal to pay any agent fees owed as a result of agents' work in assisting clients in obtaining their PPP loans.

39.     As alleged herein, Defendant has engaged in unlawful conduct.  The SBA's PPP regulations specifically provide that "lenders" who provide loans under the program will be responsible for paying "agent" fees, within prescribed limits.

40.     Defendant has refused to pay "agent" fees to Plaintiff and the Class.

41.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits, which they would not have received if they had not engaged in the violations of Section 17200 described in this Complaint.

42.     Plaintiff and Class Members have been injured as a result of Defendant's "unlawful" conduct and "unfair" business practices.  In particular, Plaintiff and the Class have collectively lost millions of dollars in fees.

43.     Plaintiff and the Class thus ask this Court to award them equitable relief, damages and all other relief available at law.

---

[6] J.P. Morgan Private Bank, Small Business Owners: CARES Act FAQ (May 14, 2020), https://privatebank.jpmorgan.com/gl/en/insights/planning/small-business-owners-cares-act-faq (last visited June 23, 2020).

2007182.1

## COUNT III CONVERSION

44.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

45.     Under the PPP regulations, Plaintiff and the Class, as PPP agents, have a right to agent fees that must be paid from the amount of lender fees provided to Defendant for processing the funded PPP loan applications of Plaintiff's client and the Class's clients.

46.     The PPP regulations state that "[a]gent fees *will* be paid out of lender fees" and provide guidelines on the amount of agent fees that should be paid to the PPP agent, based upon the size of the PPP loan.

47.     Additionally, the PPP regulations require that lenders, not loan recipients, pay the agent fees. The PPP regulations unequivocally state that "[a]gents may not collect fees from the applicant."

48.     Plaintiff and the Class assisted clients with applying for PPP loans, including gathering and curating information necessary for completing PPP loan applications that were subsequently funded. Due to Plaintiff's and the Class's efforts, their clients were awarded PPP loans, through applications made with Defendant. As such, Plaintiff and the Class have a right to immediate possession of the agent fees.

49.     Defendant has nonetheless refused to provide those fees to Plaintiff and the Class, thus keeping the agent fees that were paid to it for purposes of being passed on to the agents. By withholding these fees, Defendant has maintained wrongful control over Plaintiff's property inconsistent with Plaintiff's entitlements under the PPP regulations.

50.     Defendant committed civil conversion by retaining monies owed to Plaintiff and Class Members.

2007182.1

51.     Plaintiff and the Class have been injured as a direct and proximate cause of Defendant's misconduct. Plaintiff, as such, seeks recovery from Defendant in the amount of the owed agent fees, and all other relief afforded under the law.

## COUNT IV – UNJUST ENRICHMENT

52.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

53.     Defendant has obtained millions of dollars in benefits in the form of PPP loan origination fees. A portion of those fees were to be paid to agents, including Plaintiff, who assisted in their clients' PPP loan applications. But Defendant is refusing to pay those fees, in contravention of PPP regulations and to the detriment of Plaintiff and the Class.

54.     Principles of justice, equity, and good conscience demand that Defendant not be allowed to retain these agent fees. Defendant has fallen short in its duties as a lender, and has frustrated the Congressional intent to aide small businesses during a time of a global health crisis.  As a result, Plaintiff and the Class Members have been unable to obtain the agent fees due to them.

55.     Accordingly, Defendant must disgorge the portion of any and all PPP origination fees that it has retained to the extent they are due to Plaintiff and Class Members in their capacities as agents.

## COUNT V – MISAPPROPRIATION

56.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

57.     Plaintiff and Class Members expended substantial time, effort, and skill in assisting their clients to prepare and submit PPP loan applications.

2007182.1

58.     Defendant knew, or should have known, that Plaintiff and Class Members were expending substantial time, effort, and skill to assist applicants. Defendant has benefitted from Plaintiff's and Class Members' labor because that labor enabled many small businesses to apply for loans, which would otherwise have been without the means and ability to do so, either entirely or in a timely enough fashion to actually receive funds. Defendant received fees from those successful applications.

59.     Acting in bad faith, Defendant has refused to pay Plaintiff and Class Members their statutorily mandated fees. Thus Defendant has misappropriated the labor, skills, and expenditures of Plaintiff and Class Members.

60.     Plaintiff and the Class have been injured as a direct and proximate cause of Defendant's misappropriation, and seek recovery from Defendant in the amount of the owed agent fees, and all other relief afforded under the law.

## DEMAND FOR JURY TRIAL

61.     Plaintiff demand a trial by jury on all issues to the fullest extent permitted under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robin Johnson d/b/a/ CG Johnson & Company, individually and on behalf of the Class, respectfully prays for the following relief:

(a) An order certifying the Class as defined above, appointing Plaintiff as the representatives of the Class, and appointing their counsel as Class Counsel;

(b) An order declaring that Defendant's actions, as set out above, constitute unjust enrichment, conversion, misappropriation, and violate Cal. Bus. & Prof. Code §17200, and violate the SBA's PPP regulations;

(c) An award of all economic, monetary, actual, consequential, compensatory,

2007182.1

and punitive damages available under the law and caused by Defendant's conduct, including without limitation, actual damages for past, present and future expenses caused by Defendant's misconduct, lost time and interest, and all other damages suffered, including any damages likely to be incurred by Plaintiff and the Class;

(d) An award of reasonable litigation expenses and attorneys' fees;

(e) An award of pre- and post-judgment interest, to the extent allowable;

(f) The entry of an injunction and/or declaratory relief as necessary to protect the interests of the Plaintiff and the Class; and

(g) Such other further relief that the Court deems reasonable and just.

2007182.1

Dated: July 8, 2020

Respectfully submitted,

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP


By: */s/ Jonathan D. Selbin*
    Jonathan D. Selbin

250 Hudson Street, 8th Floor
New York, New York  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Michael W. Sobol
Roger N. Heller
Anne B. Shaver (*application for admission pending*)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Andrew R. Kaufman (*pro hac vice forthcoming*)
222 2nd Avenue South, Suite 1640
Nashville, TN  37201
Telephone:  615.313.9000
Facsimile:  615.313.9965

Gary Klinger (*pro hac vice forthcoming*)
MASON LIETZ & KLINGER LLP
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (202) 429-2290

*Attorneys for Plaintiff Robin Johnson*

2007182.1